# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JIMMIE LEE BROWN,**
      **Plaintiff,**

    v.                                                               **Case No. 18-C-0037**

**JENNIFER ARNDT and**
**RICHARD GINKOWSKI,**
      **Defendants.**

## DECISION AND ORDER

Jimmie Lee Brown, proceeding pro se, brought this action under 42 U.S.C. § 1983 alleging that he was wrongly arrested and detained for—and eventually convicted of—failing to register as a sex offender in Wisconsin. Before me now are the parties' cross motions for summary judgment and several related motions

## I. BACKGROUND

In 1987, Brown was convicted of aggravated criminal sexual abuse in Lake County, Illinois. He was released on parole on January 6, 1995. In 1996, the Illinois Sex Offender Registration Act took effect. Brown concedes that the Act applied to him and required him to register as a sex offender in Illinois for a period of ten years following his release on parole, that is, until January 6, 2005. Brown registered in Illinois in 1996 and 1998. After 1998, he stopped registering in Illinois. Brown contends that this is because he left Illinois in May 1998. *See* Pl. Resp. to Def. Prop. Findings of Fact ("PFOF") ¶ 7, ECF No. 27.

In 1999, the Illinois Sex Offender Registration Act was amended to provide that if a person subject to the Act fails to register as required, the person's registration period

is extended until 10 years from the date that the person cures the violation. *See* Aff. of Tracie Newton ¶ 9, ECF No. 1010; *see also* 730 Ill. Comp. Stat. § 150/7. In 1999, the Illinois State Police (the agency responsible for maintaining the registry) determined that Brown fell out of compliance with the Act. *See* Letter from Tracie Newton, August 14, 2015, at 1; ECF No. 19-1 at p. 3 of 6.[1] According to that agency, "[a] non-compliant registrant in Illinois has no ending registration date until the person becomes compliant." *Id.*

At around this time, Brown came to Wisconsin and committed crimes here. In 2010, while he was released on supervision for his Wisconsin crimes, Brown's supervising agent told him that because he was required to register as a sex offender in Illinois, he was also required to register in Wisconsin. The agent's insistence that Brown register was based on Wis. Stat. § 301.45(1g)(f), which provides that a person is required to register in Wisconsin if the person "is registered as a sex offender in another state." Brown protested, telling his agent that his requirement to register in Illinois ended in 2005.

In April 2010, defendant Jennifer Arndt, a Registry Specialist with the Wisconsin Department of Corrections, concluded that Brown was required to register in Illinois until April 15, 2020. Brown disputes that the Illinois registry reflected that he had a duty to register until that date. According to him, the registry may have shown that he had a duty to register at the time Arndt checked it in 2010, but it did not also show that the

---

[1] Newton's letter has not been properly authenticated and is hearsay. However, I do not understand either party to be disputing the facts recounted in her letter. Accordingly, I will consider the letter's contents in the course of deciding the present motions.

2

duty would last until 2020. Arndt does not remember exactly how she determined that Brown's duty to register lasted until 2020, but she states that her practice was to either call the Illinois State Police or obtain information from its website. *See* Decl. of Jennifer Arndt ¶¶ 6, 15–16. Brown contends that Arndt simply fabricated the April 15, 2020 date. However, it is obvious that Arndt picked the date by adding 10 years to the date that she checked the Illinois registry and learned that Brown was required to register but was non-compliant. Arndt's records show that she checked the registry on April 14, 2010. *See* Ex. 1000 at 4, ECF No. 24-1 at p. 4 of 4. Because Illinois listed Brown as non-compliant as of that date, and because under Illinois law Brown's duty to register would have lasted until 10 years from the date that he cured his non-compliance, Arndt likely concluded that Brown's duty to register would last at least 10 years from the date that she checked the registry. Technically, as of April 14, 2010, Brown had no ending registration date in Illinois because he was out of compliance. But if Arndt needed to enter an ending date into her records, April 15, 2020 would work because Brown's duty to register could not possibly have ended sooner than that.

Although Brown initially failed to comply with his supervising agent's order that he register as a sex offender in Wisconsin, he registered on January 12, 2011. Def. PFOF ¶ 16. In November 2011, Brown left his registered address and absconded from supervision. *Id.* ¶ 17. Wisconsin requires registered sex offenders to update their address within 10 days of moving. Brown did not update his address within 10 days and therefore was no longer properly registered in Wisconsin.

On June 8, 2012, Brown was arrested for absconding from supervision and detained at the Kenosha County Jail. On July 3, 2012, Brown's supervision was

3

revoked, and he remained in the Kenosha County Jail. During the following few months, the Department of Corrections repeatedly notified Brown that he was not in compliance with the registry and demanded that he update his information. Brown admits that he refused to comply. *See* Def. PFOF ¶ 24.

On October 1, 2012, Arndt asked the Kenosha County District Attorney's Office to bring criminal charges against Brown and arrest him for failing to comply with the registration requirements. As part of her request, Arndt sent the D.A.'s office a document entitled "Sex Offender Registry Non-Compliance Report." *See* Ex. 1001, ECF No. 24-2. The report stated that Brown was required to register in Wisconsin based on his Illinois registration. It listed Brown's "registration start date" as January 6, 1995, and his "registration end date" as April 15, 2020. *Id.* The report said that Brown had moved from his registered address and failed to update his address with the registry within 10 days. The report also explained that Brown had violated the Wisconsin registration law by failing to annually update his address and by failing to respond to communications from the Department of Corrections about his registration.

On October 4, 2012, Brown was released from the Kenosha County Jail. Because his release resulted in a change of address, he was required to update his address in the Wisconsin registry. Again, Brown failed to do so.

In December 2012, an assistant district attorney for Kenosha County, defendant Richard Ginkowski, signed a criminal complaint alleging that Brown had committed a crime by failing to update his Wisconsin registration. In the probable-cause section of the complaint, Ginkowski stated as follows:

4

> On October 4, 2012, the Kenosha County District Attorney's Office received documentation from Jennifer Arndt, Registry Specialist for the Wisconsin Department of Corrections, showing that Jimmie L. Brown, the defendant, had been non-compliant with the Sex Offender Registry Program. The defendant was convicted of Aggravated Criminal Sexual Abuse/Bodily Harm on January 16, 1987, in Lake County, Illinois . . . and was required to register as a sex offender until April 15, 2020.

Ex. 1006 at 1, ECF No. 25-4. The complaint then described Brown's failures to update his address over the prior months.

Based on the probable cause alleged in the criminal complaint, a warrant was issued for Brown's arrest. *See* Ex. 1005, ECF No. 25-3. He was arrested on January 9, 2013. Brown was unable to post bond and thus remained in custody for the duration of pretrial proceedings.

During the criminal case, Brown claimed that he was not required to register in Wisconsin because his requirement to register in Illinois ended in January 2005. Trying to prove this, Brown and his defense attorney contacted the Illinois State Police. The State Police did not provide a prompt response. By July 2013, the State Police still had not responded, and Brown was still being held in jail awaiting trial on the failure-to-update charge. Around this time, the state offered Brown a plea agreement under which he would plead guilty in exchange for a sentence of time served (172 days). Tired of the delays, Brown accepted the plea and was sentenced to time served.

Unbeknownst to Brown, the Illinois State Police had removed him from the Illinois registry on March 13, 2013 without telling anyone. More than two years later, on August 14, 2015, the Illinois State Police sent a letter to the investigator employed by Brown's defense counsel explaining what had happened. *See* ECF No. 19-1. According to the letter, when defense counsel inquired into Brown's duty to register in Illinois, the State

5

Police dove deeper into his file to determine whether he was still required to register. *Id.* at p. 4 of 6. The agency decided that Brown was never properly notified of his duty to register after 1998 and that therefore his duty to register in Illinois should have expired in January 2005, 10 years after he was released from prison. *Id.* Thus, on March 13, 2013, the State Police officially removed him from the Illinois Sex Offender Registry. *Id.* The State Police said that it did not notify Brown of its action because it did not have his current mailing address. *Id.*

In its letter, the State Police responded to specific questions asked by the investigator for Brown's counsel in her original letter. The investigator had asked the State Police to verify whether Brown "is required to register as a sex offender in Illinois because of his Kenosha County case until April 15, 2020." ECF No. 18-3 at p. 23 of 37. In response, the State Police wrote that "[t]here are no records in Illinois indicating Mr. Brown has a duty to register as a sex offender in Illinois until April 15, 2020." *Id.* The State Police then explained that if Brown were convicted of a felony offense in Kenosha, his duty to register in Illinois would be reactivated and last for the rest of his life.

The investigator had also asked whether Brown was required to register in Illinois in October 2012, when his alleged failure to register in Wisconsin occurred. The State Police said that "[w]hen Mr. Brown was charged with failure to register in Wisconsin in October 2012, at that time he was considered a non-compliant sex offender in Illinois." ECF No. 19-1 at p. 4 of 6. The State Police added that although he was removed from the registry in March 2013, as of October 2012, "technically he had a duty to register in Illinois." *Id.* As of that date, Brown also "had no known ending registration date since he was non-compliant." *Id.*

6

In October 2015, Brown, through his defense counsel, filed a motion for postconviction relief seeking an order vacating his sentence, withdrawing his guilty plea, and dismissing the charge against him. The court granted the motion in February 2016.

Currently, Brown is in prison in Wisconsin based on convictions that were obtained after he was released from jail in 2013. In January 2018, while he was incarcerated, he commenced the present action against Arndt, Ginkowski, and others (whom I have since dismissed) under § 1983. In screening the complaint under 28 U.S.C. § 1915A, I construed it as stating a claim for wrongful arrest and pretrial detention under the Fourth Amendment. *See Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019). The parties have filed cross motions for summary judgment on this claim. In addition, Brown has filed a motion to appoint counsel and a motion to extend the deadline for completing discovery, and the defendants have filed a motion to strike Brown's motion for summary judgment. I consider these motions below.

## II. DISCUSSION

### A. Cross Motions for Summary Judgment

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Brown's claim is that Arndt and Ginkowski made false statements in the criminal complaint and warrant application in order to establish probable cause for his arrest,

detention, and criminal prosecution. More specifically, he contends that they "fabricated" their claim that he was required to register as a sex offender in Illinois until April 15, 2020. *See, e.g.,* Pl. Reply to Def. Mot. for Summ. J. at 1, ECF No. 28. Thus, I construe his claim as arising under the Fourth Amendment and *Franks v. Delaware*, 438 U.S. 154 (1978). To prevail, Brown must prove that the defendants "intentionally or recklessly include[d] false statements in a warrant application and [that] those false statements were material to a finding of probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019).[2] Here, there is no dispute that the allegedly false statement was material to a finding of probable cause, and thus the sole issue is whether the defendants made an intentionally or recklessly false statement in the criminal complaint.

Although Brown has sued both Arndt and Ginkowski, Arndt is the only defendant who made the statement at issue. In the criminal complaint, Ginkowski identified Arndt as the source of the information giving rise to probable cause and did not claim that he independently investigated whether Brown was required to register in Illinois. Moreover, no evidence in the record suggests that Ginkowski had reason to believe that the information supplied by Arndt was false or otherwise untrustworthy. And under § 1983, Ginkowski cannot be deemed vicariously liable for any constitutional violation committed by Arndt. *See, e.g., Pacelli v. DeVito*, 972 F.2d 871, 878 (7th Cir. 1992). Thus, Ginkowski is entitled to summary judgment.

---

[2] Because Brown was convicted, he also presses a due-process claim for wrongful conviction based on fabricated evidence. *See Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) (citing authorities stating that convictions based on fabricated evidence violate the defendant's right to due process). However, because the due-process claim involves the same basic issue as the Fourth Amendment claim—whether the defendants fabricated their representation that the plaintiff was required to register in Illinois until April 2020—I will not separately discuss the due-process claim.

As for Arndt, she claims that she did not fabricate her statement that Brown had a duty to register in Illinois until April 15, 2020. Instead, she explains, her typical practice for obtaining registration information from Illinois was to either call the Illinois State Police Sex Offender Registration Unit or visit the Illinois Sex Offender Registration website. Arndt Decl. ¶ 6. Understandably, Arndt does not remember which of these methods she used to obtain information about Brown in 2010 and/or 2012. But there is no evidence in the record from which a reasonable jury could conclude that Arndt did not consult one of these sources before concluding that Brown was required to register in Illinois. Arndt did not know Brown and had no apparent motive to falsify evidence about him. Her contemporaneous records reflect that she reviewed Brown's registration requirements on April 14, 2010 and determined that he was required to register as of that date. *See* Ex. 1000 at 4. She then concluded that Brown would have a duty to register in Illinois for 10 more years. Her conclusion was accurate given that, at the time she would have obtained information from the Illinois State Police, the agency would have told her that Brown was required to register, was non-compliant, and would be required to register for 10 years after he became compliant.

Brown points out that, in response to his counsel's investigator's inquiry, the Illinois State Police wrote that "[t]here are no records in Illinois indicating Mr. Brown has a duty to register as a sex offender in Illinois until April 15, 2020." ECF No. 19-1 at p. 4 of 6. I take Brown to be suggesting that this means Arndt must have fabricated the April 15, 2020 date. But, as I have explained, at the time Arndt would have inquired about Brown's registration status in April 2010, Illinois records would have shown that Brown was required to register and was non-compliant. Under Illinois law, that meant Brown

9

"had no known ending registration date." ECF No. 19-1 at p. 4 of 6. Once Brown brought himself back into compliance, Illinois would have required him to continue registering for 10 years. *See* 730 Ill. Comp. Stat. 150/7. So, if Arndt made an inquiry on April 14, 2010, she would have learned that Brown would have been required to register in Illinois until *at least* April 15, 2020. That is, Arndt would have learned that Brown's duty to register in Illinois would have ended on April 15, 2020 if he cured his failure to register on April 15, 2010, which was the soonest he could have done so. Thus, Arndt could reasonably assume that Brown would have a duty to register in Illinois until at least April 15, 2020, even though, as far as Illinois was concerned, Brown's duty to register had no end date. Presumably, as 2020 approached, Arndt would have made a new inquiry with Illinois to determine whether Brown had cured his noncompliance and then updated her records accordingly. For these reasons, the lack of a specific record in Illinois stating that Brown had a duty to register until April 15, 2020 is not suspicious. It certainly does not suggest that Arndt never obtained information from Illinois and instead fabricated her claim that Brown was required to register there until April 15, 2020.

Brown also contends that, although Arndt may have checked with Illinois in 2010, she failed to do so again in 2012 before she sought the arrest warrant. Arndt does not indicate whether she re-checked the registry in October 2012 before seeking the arrest warrant. Construing the evidence in the light most favorable to Brown, I assume that she did not. However, it would not follow that Arndt made intentionally or recklessly false statements in the warrant application. As explained, when Arndt checked the registry in 2010, she learned that the soonest Brown's duty to register in Illinois could

have ended was April 15, 2020. Thus, Arndt did not need to re-check the registry in 2012 to have probable cause to believe that Brown's duty to register lasted until April 15, 2020. And of course, had Arndt re-checked the registry in October 2012, she would have seen that it still listed Brown as required to comply, for the Illinois State Police did not remove him from the registry until March 2013.

Brown also contends that Arndt had a duty to determine whether the Illinois State Police was correctly listing him as still required to register. However, Brown's rights could have been violated only if Arndt intentionally or recklessly made a false statement in the warrant application. A person does not intentionally or recklessly make a false statement by failing to double-check information provided to him or her by a reliable source. Here, the Illinois State Police is a reliable source of information about who is required to register in Illinois, for it is the very agency that determines who is required to register in Illinois. Thus, Arndt could truthfully state in the warrant application that Brown "was required to register as a sex offender [in Illinois] until April 15, 2020" even though she did not verify that the Illinois State Police had correctly applied Illinois law.[3]

For these reasons, Arndt and Ginkowski are entitled to summary judgment, and the plaintiff is not entitled to summary judgment. The defendants' motion will be granted,

---

[3] Indeed, it is at least arguable that Brown violated Wisconsin law by failing to register here even though the Illinois State Police had erred in thinking that he was required to register in Illinois. Wisconsin law states that a person is required to register in Wisconsin if the person "is registered as a sex offender in another state." Wis. Stat. § 301.45(1g)(f). Here, the agency responsible for the registry in Illinois registered Brown as a sex offender in Illinois. Under Wisconsin law, this may have been sufficient to trigger Brown's duty to register here, even if the State Police had mistakenly required Brown to register.

11

and the plaintiff's motion will be denied. The denial of the plaintiff's motion renders the defendants' motion to strike that motion moot.

**B.     Plaintiff's Motion to Recruit Counsel and for an Extension of Time**

Before he filed his motion for summary judgment, the plaintiff filed a motion to recruit counsel. "When confronted with a request under [28 U.S.C.] § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, I will assume that the plaintiff made a reasonable attempt to obtain counsel. However, I believe that the plaintiff was competent to litigate the case himself. The facts and legal issues were not complex, and the plaintiff ably argued his case in his summary-judgment briefs. The plaintiff's pro-se and incarcerated status might have prevented him from obtaining depositions of out-of-state witnesses (such as representatives of the Illinois State Police) or obtaining admissible documentary evidence from such witnesses. However, I resolved this issue in the plaintiff's favor by considering the letters he filed from the Illinois State Police even though he did not submit them in admissible form and even though they were hearsay. Accordingly, the plaintiff's motion to recruit counsel will be denied.

On June 27, 2019, nearly two months before the summary-judgment motions were filed, the plaintiff filed a motion to extend the discovery deadline. In the motion, he stated that his prison was on lockdown and that this made it difficult for him to obtain copies and to have certain papers notarized. It appears that this motion may be moot,

for the plaintiff submitted his documentary evidence with his summary-judgment materials, and I did not penalize him for submitting the materials in an inadmissible form. In any event, I do not see any way in which additional discovery might alter the outcome of this case, and so I will deny the motion for an extension as moot.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to strike the plaintiff's motion for summary judgment (ECF No. 26) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to recruit counsel (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for an extension of time (ECF No. 17) is **DENIED** as **MOOT**.

**FINALLY, IS IT ORDERED** that the Clerk of Court enter final judgment.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2020.

s/Lynn Adelman  
LYNN ADELMAN  
United States District Judge